NELSON BROTHERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson Bros., Inc. v. Commissioner
Docket Nos. 34540-87, 20207-89
United States Tax Court
T.C. Memo 1991-52; 1991 Tax Ct. Memo LEXIS 77; 61 T.C.M. (CCH) 1865; T.C.M. (RIA) 91052; February 11, 1991, Filed *77 Petitioner entered into a settlement agreement with respondent in an earlier case. The agreement was entered into the record in that earlier case. Petitioner filed Motions to Compel Compliance with this agreement for recurring issues in later years at issue in this case. Held: The parties are not bound by this agreement with respect to issues in the years 1982 through 1985. Petitioner's Motions to Compel Compliance with Settlement Agreement will be denied. F. Gerald Burnett, for the petitioner. Linda J. Wise, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM OPINION These consolidated cases are before the Court on petitioner's Motions to Compel Compliance with Settlement Agreement, separately filed by petitioner in docket No. 34540-87 on August 29, 1988, involving the fiscal years ended June 30, 1982, and June 30, 1983, and in docket No. 20207-89 on October 11, 1989, involving fiscal years ended June 30, 1984, and June 30, 1985. Petitioner, Nelson Brothers, Inc., is a Delaware corporation with its principal place of business in Parrish, Alabama. William H. Nelson, Jr., was the founder of petitioner. Petitioner is an accrual-basis taxpayer. For the *78 years 1978 and 1979, petitioner reported income on a calendar-year basis. From 1980 through 1985, petitioner reported income on a fiscal-year basis ending June 30. For any references to the years 1978 and 1979, it will be understood that we are referring to the calendar year. For any references to the years 1980 through 1985, it will be understood that we are referring to the fiscal year. In 1980, petitioner entered into a consignment commission arrangement with Nelson & Sons, a partnership owned and controlled by petitioner's stockholders, in which petitioner paid consignment commissions to Nelson & Sons. This arrangement continued through 1984 at which time the arrangement was terminated. Petitioner entered into a Spousal Income Benefit Plan and Agreement (hereinafter referred to as the Spousal Plan) with Mr. Nelson to provide payments to his widow upon his death. The Spousal Plan, instituted as of January 1, 1979, provided that one-half of Mr. Nelson's monthly salary in effect at the time of his death would be paid to his widow if certain conditions precedent were satisfied. Mr. Nelson was the chief executive officer of petitioner at the time the Spousal Plan was instituted *79 and at the time of his death in November 1980. Payments to Mrs. Nelson began in December 1980. During 1981, Mrs. Nelson received $ 109,000. Mrs. Nelson received $ 180,000 per year in 1982, 1983, 1984, and 1985. On June 28, 1985, petitioner entered into an agreement with Mrs. Nelson pursuant to which the Spousal Plan was canceled and a promissory note (hereinafter referred to as the Spousal Note) was issued in substitution. The principal amount of the note was $ 787,000. Respondent issued a notice of deficiency on April 2, 1985, (hereinafter referred to as the First Case) in which respondent determined that deficiencies were due from petitioner for the years 1975 through 1980. Form 5278, Statement-Income Tax Changes, was attached to the notice of deficiency and showed adjustments to the year 1981. [1] The notice of deficiency included adjustments to officers' compensation in the years 1978 and 1979 and disallowed deductions for consignment commissions for the year 1980. For the year 1981, the adjustments included adjustments to officers' compensation and the disallowance of deductions for consignment commission and spousal payment expenses. Deductions for consignment commissions *80 and spousal payment expenses were disallowed because, according to respondent, petitioner had not "established that any of the amounts claimed was for an ordinary and necessary business expense, or was expended for the purpose designated." Respondent also determined that the requirements of section 404 [2] had not been met with respect to the spousal expense deduction. On June 28, 1985, petitioner filed a petition with this Court commencing the First Case which was assigned docket No. 21274-85. *81 Respondent issued a notice of deficiency for the years 1982 and 1983 on July 28, 1987. Respondent disallowed deductions for consignment commission and spousal payment expenses for both years. [3] The deductions for consignment commissions were disallowed under section 482. The petition commencing docket No. 34540-87 was filed with this Court on October 23, 1987. Petitioner was advised prior to calendar call of the First Case that respondent would commence an audit examination of petitioner's 1984 and 1985 income tax returns. In June 1987, Revenue Agent Duncan McLean, in the Examination Division, was assigned to do the examination of petitioner's 1984 income tax return. In July 1987, Mr. McLean contacted petitioner's controller to schedule the initial appointment. A delay was requested by the controller since petitioner was in the *82 process of doing the year-end audit. Subsequently, Richard Powell, petitioner's accountant, requested that the examination be postponed until after the trial of the First Case. During this time, Mr. McLean input information in his computer, discussed the case with the agent who handled the preceding examinations, and researched the files from the prior examinations. Sometime prior to calendar call, Bill Cooper, a technical advisor assisting respondent on the accounting issues, was informed of the buy out of the Spousal Plan. Mr. Cooper could not remember the circumstances in which he was informed of the Spousal Note. On September 17, 1987, Robert C. Walthall, petitioner's counsel, Mr. Powell, Robert W. West, respondent's counsel, and Mr. Cooper met to discuss the case. [4] However, prior to calendar call, the parties did not enter into any serious settlement discussions. *83 The First Case was set for calendar call before Judge Korner in Birmingham, Alabama, on Monday, October 26, 1987. On Monday, Mr. Walthall requested a pretrial conference. In the pretrial conference, Judge Korner suggested that the parties try to work out further stipulations. On that afternoon, Mr. West received a telephone call from Mr. Walthall inquiring about the possibility of settlement. Settlement negotiations were conducted almost exclusively by Mr. West and Mr. Walthall. Mr. Powell did not participate in the settlement discussions. During this time, Mr. West conferred with his supervisor, Birmingham District Counsel John Harper, Bill Cooper, and respondent's expert on the compensation issue. As Mr. West's supervisor, Mr. Harper had the duty of approving any settlement of the case. Mr. Walthall made the first settlement offer. This offer addressed only the years in issue in the First Case and was comprised of specific amounts to be allowed on the three main issues. After consultations with Mr. Harper, Mr. Cooper, and respondent's expert, and with Mr. Harper's approval, Mr. West telephoned Mr. Walthall, rejected petitioner's offer, and made a counteroffer which covered *84 only the years in issue in the First Case. The counteroffer provided that the compensation issue was to be settled by reducing the adjustments to specific amounts in each year; the spousal expense was to be settled by petitioner conceding 40 percent and respondent conceding 60 percent of the $ 109,000 adjustment in the year 1981, and the consignment commission expense was to be conceded totally by petitioner. Mr. Walthall called back and made a counter counteroffer. After Mr. West discussed this proposal with Mr. Harper, Mr. West telephoned Mr. Walthall, rejected the proposal, and advised Mr. Walthall that respondent would not settle on any basis other than the one set forth in Mr. West's previous counteroffer and gave Mr. Walthall additional time to consider the counteroffer. Mr. Walthall asked respondent's counsel if the same basis of settlement could be used for the issues in subsequent years. He advised Mr. West that the petition for such years had recently been filed with the Tax Court. Mr. West responded that he did not see why they would not be able to do this, but that he would have to get Mr. Harper's authorization. Mr. Walthall telephoned Mr. West and accepted respondent's *85 counteroffer. On October 28, 1987, Mr. Walthall provided Mr. West with a copy of the petition for the years 1982 and 1983. Mr. West received authorization from Mr. Harper to settle the recurring issues in the years 1982 and 1983 on the same basis as in the First Case. Prior to the hearing of the First Case on October 28, 1987, Mr. Walthall met with respondent's counsel and further discussed the settlement of recurring issues for subsequent years. Mr. Harper advised Mr. Walthall that the office of District Counsel did not have authority to settle the issues in nondocketed years and could not compel the Examination Division to settle the issues for such years. However, Mr. Harper advised Mr. Walthall that the Government would have no incentive or purpose in relitigating recurring issues in nondocketed years. Mr. Harper also stated that both he and Mr. West could use their influence to have the Examination Division settle the recurring issues in the nondocketed years on the same basis as the proposed settlement in the First Case. At the beginning of the hearing in the First Case, Mr. West advised the Court that the parties had reached a basis of settlement. The parties entered *86 the terms of the settlement (hereinafter referred to as the Settlement) into the record as follows: MR. WEST: Your Honor, we are ecstatic to announce that we have reached a basis of settlement in this case. * * * THE COURT: All right, gentlemen. Now, would it be advisable to get into the record the basis of settlement -- MR. WEST: Yes, Your Honor. THE COURT: -- or is it perfectly clear? MR.WEST: It is clear to the parties, and we can read the basis into the record. * * * MR.WEST: Your Honor, the first adjustment in the notice of deficiency is spousal expense, and in the one year that that is at issue, 1981, the adjustment will be $ 43,600. * * * MR.WEST: Your Honor, the Respondent is conceding 60 percent, and the Petitioners are conceding 40 percent, and the adjustment, as it reads now, of $ 109,000, will be changed to an adjustment of $ 43,600. THE COURT: All right. MR.WEST: The second adjustment is compensation for officers, and it is in three years: 1978, 1979, and then 1981. * * * * * * THE COURT: Very well. MR.WEST: The consignment issue, there is no change; the Petitioners are conceding the consignment issue. The remaining -- THE *87 COURT: That is for the years '80 and '81. MR.WEST: For years '80 and '81. THE COURT: All right. MR.WEST: The remaining adjustments are not at issue. * * * * * * MR. WALTHALL: Just one question, Your Honor. We have filed another petition in the Tax Court involving the years 1982 and 1983. We have agreed to make this settlement concept apply to those two years, and I guess I have a question here. I also want that concept to apply to subsequent years, which I think, on the issues involved here, Respondent is agreeable to, and somehow I want to document that, also, and I guess I have a question for the Court as to how we should deal with that. MR.WEST: Your Honor, as I understand, in the last couple of weeks the 1982 and 1983 fiscal year petition has been filed. That docket number is 34540-87, and the two issues in dispute are the spousal issue and the consignment commissions issue. Respondent and Petitioner have agreed to use the same basis in that case that is now pending. It has not been answered yet by Respondent. We will file -- instead of an answer, we will just file a decision document, if it is okay with the Court. THE COURT: Well, I think that is fine. *88 Now, you understand that case is not before me. MR.WEST: Yes, Your Honor. THE COURT: So there is no official action that I can or would take with regard to that later petition that has just been filed, but it is clear that the parties intend to settle that newly filed case on the same basis as the present case, and I think that is fine. Now, Mr. Walthall, there isn't anything that I can do in the context of this proceeding, as I see it, to make that in any fashion binding on either side, but I simply rely on the good faith of the parties to carry out their understanding. Now, as to what happens beyond 1983, that is a matter that still lies in the future, and there isn't anything one way or the other that I can or would do about it. Normally, I would think in a case like this that the parties would enter into something in the nature of a collateral agreement to govern future years. Now, I will leave it to the parties to work out the best form that that could be. I wouldn't think that it would be necessary to have a formal closing agreement or anything of that sort. There isn't anything official that I can do about that, if that was your question. MR.WEST: Your *89 Honor, I can represent on the record that, for at least the new docket number, for years '82 and '83, that will be coming to our office and will be under our jurisdiction, that we will settle that case based on the basis that we have reached. THE COURT: Now, as to years that haven't yet been audited or as to which no statutory notice has been issued and no petition filed in the Court, that is outside my jurisdiction. If the parties want to protect themselves with regard to that, I will leave that up to the parties to do it in whatever fashion is appropriate. MR. WALTHALL: Well, somehow I think we do need to protect ourselves as to those years on the specific issues that are involved here, and I realize that is not your jurisdiction or problem. THE COURT: Well, that is correct. I wouldn't anticipate any problem about it. The parties obviously have arrived at this present settlement of the pending case in good faith. Respondent has already announced that he is going to follow out the same thing on the other docketed case which has been filed but which is not before me and on which I am not in a position to take any action. Now, as to future years that may not even *90 have been audited yet, this lies down the road, and I simply think that if there is any desire on Petitioner's part to get consistent treatment for the same issues as they may go into those future years, I would think something in the nature of a collateral agreement, if not a formal closing agreement, is the way you ought to go, but I can't really rule on that here, and I won't. MR.WEST: Your Honor, I understand the '84 and '85 years are in the examination division, and it has been assigned to a revenue agent for examination, and we will certainly make our agreement known to the revenue agent, and we -- THE COURT: Oh, yes. You certainly should do that. MR.WEST: -- could use our influence, or we could suggest that the same treatment be given.
On December 22, 1987, Mr. Walthall and Mr. West met for the purpose of executing a decision document effectuating the settlement in the First Case. The decision was entered by the Tax Court on December 30, 1987. From the date of the hearing before Judge Korner until petitioner's Motions were filed with this Court, the parties communicated with each other in an effort to settle the issues in the years 1982 through 1985. However, *91 the parties were unable to agree during this period on whether the parties had entered into a binding agreement with respect to the years 1982 through 1985, and to the extent they had entered into an agreement, what the exact terms of the Settlement were. Mr. McLean first learned of the Settlement during a telephone conversation with Mr. West on October 28, 1987. In a memo to the file prepared by Mr. McLean, dated October 28, 1987, he noted that Bob Jones, the Appeals Officer, explained that the Settlement included giving up 60 percent of the spousal issue and that petitioner gave up the consignment expense issue for the years 1982 and 1983 as a section 482 allocation between petitioner and Nelson & Sons. In this memo, Mr. McLean also noted that Mr. Jones suggested that Mr. McLean disallow the consignment expenses "for my year" [1984] under section 162. Mr. McLean also noted that Mr. West said that the Settlement included "essentially the same elements as was discussed by Bob Jones." Mr. McLean also noted that he would contact Mr. West to go over "what he wants to do with the subsequent tax year." In a letter dated November 18, 1987, from Mr. Powell to Mr. West, Mr. Powell noted *92 that Mr. Jones made it clear that the Settlement provided for the disallowance of the consignment commission expenses under section 162. He also noted that Mr. Walthall and Mr. West desired to settle the consignment issue in the years 1982 and 1983 on the same basis as the Settlement reached in the First Case and that petitioner may wish to execute a collateral agreement or a decision document to formalize this desire. He also noted that "Whatever agreement is ultimately signed for those years should make it perfectly clear that the taxpayer is not permanently losing its net operating loss deduction which arose during its year ended June 30, 1984 and was carried back to its year ended June 30, 1982." Mr. Powell did not make any reference to the years 1984 and 1985 in this letter. Mr. Powell sent a letter, dated December 9, 1987, to respondent, which included a proposed decision for the years 1982 and 1983 and a proposed stipulation. The stipulation provided that the parties agree to a decision for the years 1982 and 1983 which allows a net operating loss carryback to the year 1982 from the year 1984 which would be subject to adjustment by respondent and allowed petitioner correlative *93 adjustments under section 482 for both years. The stipulation also provided that for the years 1984 and 1985, respondent would allow a 60-percent deduction of all spousal payments and for the year 1984, respondent would disallow 100 percent of all consignment commission deductions under section 482 if petitioner filed a petition with the Tax Court for those years. Mr. West refused to execute the decision document because the figure for 1982 took into account an operating loss carryback from 1984 and he would not enter into any settlement agreement for the years 1984 and 1985. Respondent prepared a proposed stipulation, dated January 6, 1988, which was essentially the same as petitioner's stipulation, except that respondent disagreed with the amount of the deficiency in income tax due for the year 1982. Mr. West also prepared a decision document to effectuate a settlement of the issues in the years 1982 and 1983. Petitioner refused to execute this document because it did not give effect to a net operating loss to be carried back from 1984. After the amount of the net operating loss carryback was determined by Mr. McLean in his examination of petitioner's 1984 income tax return, *94 Mr. West prepared a revised decision giving effect to the settlement and the carryback. Petitioner refused to execute this decision document for the years 1982 and 1983. Mr. Powell completed a Form 1120X, dated December 18, 1987, for the year 1982, and sent it to respondent with a letter, dated January 20, 1988. An attached statement provided that Mr. Walthall made an offer in compromise under section 7122 to the office of District Counsel to settle the issues in the years 1982 through 1985. The statement also provided that the office of District Counsel would agree to settle the consignment commission issue in the years 1982 and 1983 under section 482, but that such office had no authority to enter into settlement agreements for the issues in the years 1984 and 1985 over which the office had no jurisdiction. The statement further provided that the office of District Counsel did offer to suggest to the Examination Division that its findings be consistent with its proposed settlement of the issues in the years 1982 and 1983. The statement further provided that at the date of filing the amended return, petitioner made a 4-year settlement offer and the office of District Counsel *95 expressed a willingness to accept only the offer for the issues in the years 1982 and 1983 and would not execute a written agreement settling the issues for the years 1984 and 1985 if such years did come under its jurisdiction. The first meeting which occurred between Mr. McLean and Mr. Powell with respect to the examination of petitioner's 1984 income tax return occurred on February 3, 1988. At the time of this first meeting, petitioner's 1985 income tax return was not under examination by Mr. McLean. In a letter dated February 17, 1988, from Mr. Powell to Mr. McLean, Mr. Powell specifically requested that the Examination Division examine petitioner's 1985 income tax return, since it was petitioner's position that it had entered into a 4-year settlement agreement with the office of District Counsel. Mr. Powell noted that "This letter is written to document the Company's [petitioner's] good faith effort to comply with its four year settlement offer to the office of District Counsel and its absolute acceptance of offer for the two years over which it had settlement jurisdiction." Mr. Powell noted that petitioner wanted either of two options: (1) Respondent would honor the 4-year *96 settlement in which consignment commission deductions were disallowed under section 482 and allow petitioner a 60-percent deduction on the spousal arrangement through 1985, or (2) allow petitioner to relitigate all issues for all 4 years. In March 1988, Mr. West advised Mr. McLean that the Spousal Note was not an issue included in the Settlement. In a letter from Mr. Powell to Mr. McLean dated April 21, 1988, Mr. Powell stated that he wanted to know Mr. McLean's position with regard to the deduction of the Spousal Note and the disallowance of the consignment commission expenses under section 482 for the years 1982 through 1985 so that he could "report to the Court as to whether or not we have a firm four year settlement with respect to these two issues." Mr. McLean wrote Mr. Powell on June 27, 1988, and informed Mr. Powell that he would treat the consignment commission expenses under section 482 and allow petitioner a 60-percent deduction on spousal payments, but that the specific amount of deduction allowed would be subject to further calculations of the return amounts. Mr. Powell wrote Mr. McLean on July 9, 1988, and stated that he was troubled by what he considered "new additional *97 theories" posed by respondent with respect to the Spousal Note. Mr. Powell noted that Mr. McLean indicated that the deduction in the year 1985 of the Spousal Note may be dependent upon whether the Spousal Note is treated as a cash payment in that year or not. In July 1988, Mr. McLean requested permission to extend his examination to petitioner's 1985 income tax return. After such examination, Mr. McLean determined that the Spousal Note was a different item and a different issue and that respondent would not be bound by the Settlement with respect to this item. Mr. McLean thought that the 60 percent deduction should apply to the Spousal Note as the Spousal Note was paid off in subsequent tax years. In a letter dated July 28, 1988, from Mr. McLean to Mr. Powell, Mr. McLean stated that he intended to allow petitioner a 60-percent deduction for spousal payments for the years 1984 and 1985. However, Mr. McLean stated that it had not been shown that the Spousal Note represented anything other than the net present value of the Spousal Plan, and as such, was subject to section 404(a), which allowed a deduction for amounts paid. Mr. McLean stated he would continue to consider the issue *98 until completion of the examination of petitioner's 1985 income tax return. Mr. McLean completed his examination of petitioner's 1984 income tax return on September 1, 1988. On January 31, 1989, Mr. McLean prepared a memo to the file in which he stated that he told Mr. Walthall that he intended to allow petitioner a 60-percent deduction for spousal payments. However, since the amount of $ 787,000 was paid for by a note, section 404(a) applies and the deduction is allowable only as the note is paid. Over the next few months, counsel and representatives for the parties continued to correspond. In this correspondence, each party offered its position regarding the treatment of the issues for the years 1982 through 1985. Ultimately, however, the parties were unable to resolve their differences. On August 29, 1988, petitioner filed a Motion to Compel Compliance with Settlement Agreement for the issues in the years 1982 and 1983. In the Motion, petitioner contended that an agreement in compromise was reached by the parties in the First Case, and as part of that agreement, continuing and recurring issues were also resolved for the subsequent years, 1982 through 1985 on the same basis. *99 A hearing was held on petitioner's Motion before Judge Whitaker on September 26 and 27, 1988. At the hearing, Mr. West told Judge Whitaker that respondent was willing to apply the Settlement to the issues in the years 1982 and 1983. Mr. West said that they recommended to the Examination Division that the 1984 and 1985 spousal cash payments be given the same treatment as agreed upon in the Settlement. According to Mr. West, the Examination Division had agreed to do so. Mr. West further stated that respondent had no knowledge of the Spousal Note when they entered into the Settlement and, therefore, the Spousal Note was a new issue to be settled separately. At this time, respondent had completed his examination of petitioner's 1984 and 1985 income tax returns. The Court suggested that respondent issue a Notice of Deficiency for those years in order to consolidate the cases so that the Court could decide the issues for the years 1982 through 1985. Respondent issued a notice of deficiency for the years 1984 and 1985 on August 1, 1989. The notice of deficiency disallowed deductions for consignment expenses for the year 1984 and for spousal payment expenses for the years 1984 and *100 1985. The consignment commission expense was disallowed under section 162. The spousal expense was disallowed under sections 162 and 404. In the petition to this Court in docket No. 20207-89, petitioner stated that respondent erred in his determinations with respect to the above items, and alternatively, stated that respondent erred in refusing to comply with, and abide by, the terms of the Settlement entered into between the parties in the First Case. Petitioner filed a Motion to Compel Compliance with Settlement Agreement in this case on October 11, 1989. A hearing on petitioner's Motions was held on October 24 and 26, 1989. The evidence consisted of a written stipulation of facts with exhibits attached and oral testimony and exhibits received at trial. The stipulation of facts expressly incorporated the listed exhibits as part of the stipulation. The parties also stated in the stipulation, that except as noted, each incorporated exhibit is authentic and admissible as evidence for any relevant purpose. The parties also waived all objections to this stipulation and its exhibits, except for relevancy, and unless stated in the stipulation. Petitioner contends that the Settlement *101 included not only issues in the First Case but also the continuing and recurring issues in the years 1982 through 1985. In support of this contention, petitioner presents several arguments. First, petitioner argues that on-the-record concessions constitute binding obligations and that the evidence reveals that respondent's counsel agreed, in good faith, to use his influence with the Examination Division to provide the same treatment applied in the First Case to the issues in the years 1984 and 1985. Second, petitioner argues that the parties adopted a settlement concept in the First Case which would be applied to issues in subsequent years. Third, petitioner argues that the Spousal Note was included in a package settlement. Fourth, petitioner argues that respondent cannot raise a new issue of timing of deductions with respect to the Spousal Note because respondent knew about the Spousal Note at the time the Settlement was entered into. Fifth, petitioner argues that the consignment commission issue was included in the Settlement and the parties agreed to the disallowance of such expenses under section 482, not section 162. Finally, petitioner argues that the failure of the office *102 of District Counsel to use its influence on the Examination Division resulted in a breach of the Settlement. Respondent contends that the Settlement did not encompass issues in subsequent years that were not at issue in the First Case. In support of this contention, respondent asserts that the office of District Counsel had no authority to, and did not, enter into any settlement agreement regarding or including issues in the years 1984 and 1985. Respondent also contends that respondent and petitioner previously reached a separate settlement agreement regarding issues in the years 1982 and 1983. However, respondent maintains that the parties are no longer in agreement with respect to the issues in those years. In response to petitioner's arguments, respondent argues that the evidence reveals that the Settlement in the First Case was not conditioned upon the same treatment of any issues in subsequent years. In the alternative, respondent argues that even if an agreement covering the tax treatment of specific items for the years 1984 and 1985 could be found in the proceeding before Judge Korner, it would not be enforceable because such a stipulation is binding only in the pending *103 case, not future proceedings under Rule 91(e) and respondent's agent had no authority to bind the parties with respect to issues in subsequent years. Respondent's second alternative argument is that even if an agreement in compliance with section 7121 or meeting the requirements of equitable estoppel could be found, such agreement does not cover matters that were not specifically covered by the Settlement as of the time it was announced before Judge Korner. Respondent claims that petitioner and respondent did not reach any agreement regarding whether the consignment commission expenses were to be treated as disallowed under section 162 or section 482 except for the years in the First Case. Respondent also claims that the Settlement did not cover the tax treatment of a buyout of the Spousal Plan by the Spousal Note. Respondent's final argument is that respondent has not breached the Settlement regarding the years 1984 and 1985 because respondent only agreed to recommend the Settlement to the Examination Division. Petitioner and respondent both presented their positions on how to apply the settlement concept to the Spousal Note if this Court decides that the Settlement applies *104 to the Spousal Note. The Eleventh Circuit, formerly the Fifth Circuit, whom we are bound to follow [5] has held that a settlement agreement is binding on the parties, absent fraud or mistake. ; see also ; , cert. denied . This Court has also held that a settlement agreement is binding in the absence of fraud, misrepresentation, or mutual mistake of fact. ; . This Court will enforce a settlement stipulation, whether *105 filed or orally stipulated into the record, unless for reasons of justice a party should be relieved from the stipulation. , affg. a Memorandum Opinion of this Court; ; . We have stated that respondent's concession in open court is the equivalent of a stipulation, and that respondent is bound by his stipulations. , affd. , cert. denied . In , we stated that "a compromise is a contract and thus is a proper subject of judicial interpretation as to its meaning, in light of the language used and the circumstances surrounding its execution." , affd. ; . "Stipulations, *106 like contracts, bind parties only to the terms actually agreed upon." . The Eleventh Circuit has stated that: If the language [of the contract] is ambiguous or uncertain in any respect, the surrounding circumstances, including the construction placed on the language by the parties are taken into consideration so as to carry out the intention of the parties.
, citing ; ; . However, "a contract whose terms are so indefinite, uncertain, and incomplete that the reasonable intentions of the contracting parties cannot be fairly and reasonably distilled from them" is not enforceable. . The Settlement which was a compromise of the parties' positions is a contract and *107 we will enforce the Settlement, absent mistake or fraud, or unless for reasons of justice a party should be relieved from the Settlement. We must determine the extent to which the parties intended to bind themselves regarding the years in issue and the issues in this case. We conclude that there was no package settlement agreement for the 4 years. We believe that the Settlement of the First Case was not conditioned upon the treatment of recurring issues in subsequent years. The evidence establishes that the parties were aware that respondent's counsel did not have the authority to bind respondent with respect to the years 1984 and 1985. Therefore, the Settlement could not be conditioned on similar treatment of issues in those years. With respect to the issues in the years 1982 and 1983, respondent concedes that the parties previously reached a separate settlement agreement regarding settlement of the issues in the years 1982 and 1983. However, respondent maintains that the parties are no longer in agreement. Respondent argues that for reasons of justice, the parties should be relieved from the Settlement for the issues in those years. Respondent also maintains that, pursuant *108 to Rule 91(e), a stipulation is binding only in the pending case and cannot be used against any of the parties in another proceeding. Respondent further argues that this Court has stated that "the fact that at some point the parties were in agreement is irrelevant if they are no longer in agreement when the case is called for trial," citing , affd. per curiam . Rule 91(e) does provide that a stipulation under Rule 91(a) is binding only in the pending case. However, even though the Settlement is a stipulation entered into the record before Judge Korner, which under Rule 91(e) would only be binding on the parties in the First Case, the Settlement is also an oral compromise or settlement agreement which was entered into by the parties with respect to recurring issues for the years 1982 and 1983. Such an agreement is a binding contract. In Cole, we did not make such a broad statement as respondent suggests. In that case, the taxpayer signed a proposed stipulation prior to trial. However, the authorized representative of respondent did not accept the proposed stipulation and, *109 instead, rewrote the stipulation and sent the new proposed stipulation to the taxpayer to sign. The taxpayer signed this new stipulation and returned it to respondent. However, this stipulation was not signed by respondent. We stated that the formality of signing the stipulation and retaining custody of it did not indicate that the parties were in agreement. Instead, delivery of the stipulation or other appropriate action would be needed in order for this Court to accept that a binding agreement was reached by the parties. Therefore, we did not state that the parties, while in agreement before trial, could cancel the agreement if they were no longer in agreement when the case was called for trial. Rather, in Cole, we found that the parties never reached an agreement prior to trial. We also stated in Cole that we adhere to the position that "once a stipulation is filed by both sides, it is binding upon them." . Even though we disagree with respondent with respect to the arguments presented above, we conclude that the parties are not bound by the Settlement with respect to the issues in the years 1982 and 1983. *110 The evidence reveals that immediately after the Settlement was entered into, the parties were unable to agree on how to implement the Settlement with respect to the issues in the years 1982 and 1983. Immediately, the parties had a disagreement over whether a net operating loss carryback from the year 1984 would be figured into the deficiency for the year 1982. This matter was resolved with the concession that respondent make a further adjustment. The parties disagreed over whether the consignment commission expenses would be disallowed under section 162 or section 482. The Settlement in the First Case provided that these expenses were disallowed under section 162. After much negotiation, the parties finally agreed to disallow these expenses under section 482. While the parties may have intended to be bound by the Settlement with respect to recurring issues in the years 1982 and 1983, the Settlement terms were incomplete and indefinite with respect to the issues in those years. Therefore, we conclude that the parties are not bound by the Settlement with respect to the issues in the years 1982 and 1983. With respect to the issues in the years 1984 and 1985, the testimony of *111 Mr. Walthall indicates that he was aware that respondent's counsel did not have the authority to bind respondent with respect to the years 1984 and 1985 and could only recommend that the Examination Division apply the Settlement to the issues in those years. Respondent stated on the record before Judge Korner and in other communications with petitioner that respondent's counsel lacked such authority and could only recommend that the Settlement be applied to those years. With respect to the Spousal Note, there is conflicting testimony by each party. Mr. Walthall testified that prior to the time the Settlement was announced before Judge Korner, the parties discussed the Spousal Note. He claims that on September 19, 1987, at a meeting with Mr. Powell, Mr. West, and Mr. Cooper, he informed respondent's counsel that the Spousal Plan was replaced by a Spousal Note in 1985. Mr. Walthall testified that the Spousal Note was not discussed in depth, nor was the Spousal Note shown or given to respondent. Mr. Powell's testimony concurs with that of Mr. Walthall. According to petitioner, the Spousal Note was included in the Settlement. However, respondent's counsel testified that the Spousal *112 Note was never mentioned in any meetings prior to the Settlement and was not included in the Settlement. In the Settlement stipulation, there is no mention by either party of the Spousal Note. The evidence reveals that the parties did not reach any agreement regarding whether the Spousal Note was to be included as part of the Settlement or to what amount the 60 percent would apply. Therefore, we conclude that the parties did not agree to be bound by the Settlement with respect to the Spousal Note or to other issues in the years 1984 and 1985. We hold that the parties are not bound by the Settlement with respect to the years 1982 through 1985. Since we have decided that the Settlement does not bind the parties with respect to the Spousal Note, we do not need to decide at this point in the case the maximum amount that would be allowed as a deduction for the Spousal Note in 1985. Petitioner's Motions to Compel Compliance with Settlement Agreement will be denied. An appropriate order will issued. Footnotes
1. Petitioner filed a claim for refund for the tax period ending June 30, 1981, which was received by the Internal Revenue Service Center on September 24, 1981. The issue raised in that claim for refund was allowed. However, other adjustments were made to items on petitioner's 1981 tax return. After adjustments, the total corrected income tax liability equaled the total tax shown on the return, and, therefore, did not result in an increase in tax.↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent, in the notices of deficiency in docket Nos. 34540-87 and 20207-89, made other determinations which are not relevant to the Motions pending before the Court at this time.↩
4. Petitioner testified that the Spousal Note was discussed at this meeting. However, respondent maintains that the Spousal Note was never mentioned at this meeting or anytime prior to the hearing on October 28, 1987.↩
5. See , affd. , cert. denied .↩